**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| VINH MAC,<br><br>       Plaintiff,<br><br>vs.<br><br>ACACIA COMMUNICATIONS, INC.,<br>DAVID J. ALDRICH, PETER Y. CHUNG,<br>BENNY P. MIKKELSEN, LAURINDA Y.<br>PANG, STAN J. REISS, JOHN RITCHIE,<br>VINCENT ROCHE, and MURUGESAN<br>SHANMUGARAJ,<br><br>       Defendants. | Case No.  1:19-cv-11706<br><br>**COMPLAINT FOR<br>VIOLATION OF THE<br>FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Vinh Mac ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Acacia Communications, Inc. ("Acacia" or the "Company"), brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100, & 229.1015(b)(4), arising out of the definitive merger agreement between and among Acacia, Cisco Systems, Inc. ("Cisco"), and Amarone Acquisition Corp. ("Merger Sub") (the "Merger Agreement").

2. On July 8, 2019, Acacia's Board of Directors caused the Company to enter into the Merger Agreement. Pursuant to the Merger Agreement, each share of Company common stock will be converted into the right to receive $70.00 in cash (the "Merger Consideration"). Following the consummation of the Merger Agreement, Acacia and its employees will join Cisco's Optical Systems and Optics business (the "Proposed Transaction"). The merger represents an equity valuation of approximately $2.6 billion.

3. On July 26, 2019, the Company filed a Form PREM14A Preliminary Proxy Statement (the "Proxy") with the SEC designed to convince Acacia stockholders to approve the Proposed Transaction. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the Company's financial projections; and (ii) the valuation analyses conducted by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman") to support its fairness opinion.

4. The special meeting of Acacia stockholders to vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Acacia's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**PARTIES**

6. Plaintiff is, and has been at all relevant times, a stockholder of Acacia.

7. Acacia is a corporation organized and existing under the laws of the state of Delaware. It maintains its principal executive offices at Three Mill and Main Place, Suite 400, Maynard, Massachusetts, 01754. The Company's common stock is listed on the Nasdaq Global Select Market under the ticker symbol "ACIA." Acacia is named as a defendant herein solely for the purpose of providing full and complete relief.

8. Defendant David J. Aldrich has served as a director of the Company since 2017.

9. Defendant Peter Y Chung has served as a director of the Company since 2013.

10. Defendant Benny P. Mikkelsen is the Company's Chief Technology Officer, and a director.

11. Defendant Laurinda Y. Pang has served as a director of the Company since June 2019.

12. Defendant Stan J. Reiss has served as a director of the Company since 2009.

13. Defendant John Ritchie has served as a director of the Company since 2015.

14. Defendant Vincent Roche has served as Chair of the Board since 2017 and as a director of the Company since 2016.

15. Defendant Murugesan Shanmugaraj has served as the President, Chief Executive Officer, and as a director, of the Company since 2010.

16. The Defendants described in ¶ 8 through ¶ 15 are referred to herein as the "Individual Defendants."

17. Collectively, Acacia and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Acacia is headquartered in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

21. On July 9, 2019, the Company and Acacia issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> SAN JOSE, Calif. and MAYNARD, Mass., July 9, 2019 /PRNewswire/ --
>
> - Acacia's coherent optics technology empowers webscale companies, service providers, and data center operators to meet the fast-growing consumer demands for data
>
> - Acacia is headquartered in Maynard, Massachusetts and is publicly traded on the NASDAQ
>
> - Innovation across software, silicon and optics is fueling Cisco's initiative to make networks smarter, simpler and more secure
>
> Cisco (NASDAQ: CSCO) and Acacia Communications (NASDAQ: ACIA) today announced they have entered into a definitive agreement under which Cisco has agreed to acquire Acacia. An existing Cisco supplier, Acacia designs and manufactures high-speed, optical interconnect technologies that allow webscale companies, service providers, and data center operators to meet the fast-growing consumer demands for data.

Under the terms of the agreement, Cisco has agreed to acquire Acacia for $70.00 per share in cash, or for approximately $2.6 billion on a fully diluted basis, net of cash and marketable securities. As Cisco and Acacia come together, Cisco plans to support Acacia's existing customers and new customers that want industry-leading coherent optics, digital signal processing/photonic integrated circuit modules, and transceivers for use in networking products and data centers.

"By innovating across software, silicon and optics, Cisco is reinventing every domain of the network with our intent-based architectures," said David Goeckeler, executive vice president and general manager of Cisco's networking and security business. "With the explosion of bandwidth in the multi-cloud era, optical interconnect technologies are becoming increasingly strategic. The acquisition of Acacia will allow us to build on the strength of our switching, routing and optical networking portfolio to address our customers' most demanding requirements."

Cisco offers a full portfolio of optical systems to support webscale, service provider, enterprise, and public sector customer segments. These optical systems address performance, power, and cost requirements. Acacia's technology will enrich Cisco's optical systems portfolio. It will also allow the growing number of customers transitioning from chassis-based systems to pluggable technology to simplify operations and reduce network complexities.

"Coherent technology has been a game-changer for optical networking and continues to evolve with the deployment of pluggable coherent optics," said Raj Shanmugaraj, president and chief executive officer, Acacia. "Upon close, Cisco and Acacia will continue to serve and support existing Acacia customers. By integrating Acacia technology into Cisco's networking portfolio, we believe we can accelerate the trend toward coherent technology and pluggable solutions while accommodating a larger footprint of customers worldwide."

The acquisition is expected to close during the second half of Cisco's FY2020, subject to customary closing conditions and required regulatory approvals. Upon completion of this transaction, Acacia employees will join Cisco's Optical Systems and Optics business within the networking and security business under David Goeckeler.

For additional information about Cisco's intent to acquire Acacia, please read the blog from the head of Cisco's Optical Systems and Optics business, Bill Gartner.

**The Proxy Misleads Acacia Stockholders by Omitting Material Information**

22.  On July 26, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince stockholders to vote in favor of the Proposed

5

Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's financial projections, and the financial analyses conducted by Goldman in advising the Board and in providing a fairness opinion as to the Proposed Transaction.

### *Material Omissions Regarding the Company's Financial Projections*

23. The Proxy discloses that Goldman and the Board were provided with financial projections developed by the Company's management for the purpose of evaluating strategic alternatives.

24. Three sets of projections were ultimately provided to the Board: projections created in October 2018 (the "October Projections"), the Long Range Forecast created at the beginning of the Board's process, and the June LRP projections ultimately used in evaluating the fairness of the Proposed Transaction.

25. While the Proxy discloses certain line items from the Long Range Forecast and the June LRP, it entirely omits the October Projections and any changes made from those projections to the Long Range Forecast and June LRP.

26. The Proxy also omits the projected unlevered free cash flows for the Long Range Forecast..

27. The Proxy also fails to disclose the line items necessary to reconcile the non-GAAP financial metrics of both the Long Range Forecast and June LRP, including Adjusted EBITDA, Non-GAAP Operating Income, Net Income, and Earnings Per Share.

28. For example, to reconcile Adjusted EBITDA back to GAAP metrics, , the Proxy must disclose, among other things: (a) depreciation; (b) interest income; (c) income taxes; (d) stock-based compensation; (e) warranty and other charges arising from a manufacturing process

quality issue, (f) ZTE-related inventory write-offs; and (g) subsequent adjustments and certain litigation related costs and settlement reserves.

29. Thus the Proxy misleads Acacia stockholders by omitting the material projections of the line items used in calculating non-GAAP projections. Providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

30. Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads Acacia's stockholders.

### *Material Omissions Regarding Goldman's Financial Analyses*

31. The Proxy describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Acacia's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Acacia's stockholders.

32. With respect to Goldman's *Illustrative Discounted Cash Flow* Analysis, the Proxy omits the inputs used by Goldman to calculate the discount rate range of 9.0% to 10.0% as well as the weighted-average cost of capital ("WACC"), an integral input into the analysis. Furthermore, the Proxy omits any basis for Goldman's use of a perpetuity growth rate range of 2.75% to 3.75%.

as well as the fully-diluted outstanding shares of the Company utilized in the analysis and the illustrative terminal values.

33. With respect to Goldman's *Selected Companies Analysis*, the Proxy fails to disclose the individual multiples observed by Goldman for each of the companies included in the analysis, as well as the multiples used for Acacia. Without such information, Acacia's stockholders are unable to determine how the multiples used in determining Acacia's value compare to the other companies. As a result, stockholders are unable to assess whether Goldman utilized reasonable multiples, thereby rendering Goldman's conclusion regarding the usefulness of such multiples materially misleading.

34. With respect to Goldman's *Selected Transactions Analysis*, the Proxy omits the total value of each selected transaction and the closing date for each transaction, rendering the transactions useless as a means of comparison to the Proposed Transaction.

35. Defendants' failure to provide Acacia stockholders with the foregoing material information renders the Proxy false and/or materially misleading.

36. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein

37. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Acacia**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Acacia is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Acacia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Acacia and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 7, 2019

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: /s/ *Shannon L. Hopkins*
Shannon L. Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
shopkins@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
          etripodi@zlk.com

*Attorneys for Plaintiff*